IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 14, 2015

**STATE OF TENNESSEE v. MICHAEL BONSKY**

**Appeal from the Criminal Court for Shelby County**
**No. 12-02445      James M. Lammey, Jr., Judge**

**No. W2014-00675-CCA-R3-CD  -  Filed April 27, 2016**


JAMES CURWOOD WITT, JR., J., concurring.

In this case, the jury eschewed the charge of first degree murder and convicted the defendant of the lesser included offense of second degree murder. I write separately because I thought it worth pointing out why this circumstance did not cause the instructional error to be harmless.

Formerly, at common law, a defendant could assert that a mental debility that did not rise to the level of an affirmative defense would operate nevertheless to block the fact-finder from convicting him or her of an offense of which specific intent was a necessary element. A typical theater for playing out this rule involved the claim of the defendant's voluntary intoxication at the time the crime was committed. Although involuntary intoxication theoretically constituted a complete defense, *see* R. Perkins, *Criminal Law* 894-98 (2d ed. 1969), voluntary intoxication was an "imperfect" defense (of a type that would later be denoted, albeit erroneously, as diminished capacity) in that it theoretically could be efficacious in warding off a criminal charge that required specific intent to commit the crime as a necessary element, *id.* at 900; James Curwood Witt, Jr., Comment, *Instructing the Jury of the Defense of Voluntary Intoxication in Tennessee*, 39 Tenn. L. Rev. 479 (1972). Voluntary intoxication was *deemed* to have no legal effect upon one's ability to form general intent under the common law.

Certainly, the employment of the term "premeditation" in the statutory proscription of first degree murder illustrates well the concept of specific intent. If the specific-intent/general-intent regimen were still operative following the enactment of the 1989 criminal code, the requirement of a knowing killing for purposes of a second degree murder conviction would not appear to import specific intent.

In more modern times, we know that the term "diminished capacity" has gained currency, and the term has been generally understood to refer to a mental disease or defect that precludes the offender from forming the culpable mens rea required by the proscriptive statute. In what amounts to the threshold treatment of diminished capacity in Tennessee, this court, in applying the common law proscription of premeditated first degree murder, referred handily to the limitation used in voluntary-intoxication cases that the claim could only be effective to negate specific intent. *State v. Phipps*, 883 S.W.2d 138 (Tenn. Crim. App. 1994). After noting that the concept of diminished capacity was in reality an issue of evidence impinging upon the State's burden of proving the required mens rea for a criminal offense, *see id.*, § 39-11-201(a)(2) (providing that "[n]o person may be convicted of an offense unless . . . [t]he culpable mental state required . . . is proven beyond a reasonable doubt"); Tenn. R. Evid. 402 (providing for the admissibility of evidence as relevant when it tends to make the existence of, for instance, a necessary statutory element more probable or less probable), the court said that "the passage of the 1989 criminal code and the abolition of common-law defenses within that code does not affect the rationale and conclusions reached in the pre-Act Tennessee cases pertaining to the use of diminished capacity evidence." *Id.* at 149. The court "conclud[ed] that evidence, including expert testimony, on an accused's mental state, is admissible in Tennessee to negate the elements of specific intent, including premeditation and deliberation in a first-degree murder case." *Id.* Earlier in the opinion, the court had said, "Diminished capacity is based on the presentation of evidence aimed at negating specific intent," *id.* at 144, and it noted that for the most part other jurisdictions "have held that expert testimony pertaining to the capacity to form a specific intent is admissible for consideration by the jury," *id.* The *Phipps* court, however, acknowledged a "second type of diminished capacity [that] allows a defendant to show a lack of not only the specific intent required to commit the offense, but a lack of total capacity to form any mens rea as well. Because only extraordinary circumstances exist in which a defendant would not have the capacity to form any mens rea, this type of diminished capacity is more academic than functional." *Id.* at 143. Additionally, the court said in a footnote,

> Given the facts of this case and in view of Tennessee's restriction of evidence of voluntary intoxication to specific intent cases, it is not necessary for this court to determine whether such testimony is admissible to negate mental states other than specific intent or to determine its applicability to non-murder cases.

*Id.* at 149 n.19. These statements notwithstanding, the prevalence in *Phipps* of a specific-intent limitation in addressing an offense tried under the common law employment of the specific-intent/general-intent regimen propagated the belief in some legal quarters that a claim of diminished capacity could only be efficacious when the culpable mental element

was akin to specific intent.  The Tennessee Supreme Court later approved  the "general holding" of *Phipps*.  *State v. Abrams*, 935 S.W.2d 399 (Tenn.1996).

In *State v. Hall*, 958 S.W.2d 679 (Tenn. 1997), our supreme court determined that "assuming that [evidentiary] standards are satisfied, psychiatric evidence that the defendant lacks the capacity, because of mental disease or defect, to form the requisite culpable mental state to commit the offense charged is admissible under Tennessee law."  *Id.* at 689.  The term "culpable mental state" emanates from Tennessee Code Annotated section 39-11-201(a)(2) which requires the prosecution in a criminal case to prove beyond a reasonable doubt the "culpable mental state required."  The shift to applying a diminished capacity-type claim to negate generally "the requisite culpable mental state," however, was somewhat masked by the holding in *Hall*, a first degree murder case, that the proffered expert testimony did not satisfy evidentiary standards. Rather, an *express* expansion of the doctrine beyond cases involving a mental element akin to specific intent occurred in a spate of unpublished cases.  *See*, *e.g.*, *State v. Derek T. Payne*, No. W2001-00532-CCA-R3-CD (Tenn. Crim. App., Jackson, Nov. 20, 2002); *State v. Byron A. Peete*, No. W1998-02116-CCA-R3-CD (Tenn. Crim. App., Jackson, Mar. 2, 2000); *State v. Calvin Lee Sneed*, No. 03C01-9611-CR-00444 (Tenn. Crim. App., Knoxville, June 12, 1998); *State v. Stacy Dewayne Ramsey*, No. 01C01-9412-CC-00408 (Tenn. Crim. App., Nashville, May 19, 1998).  This line of cases demonstrates beyond contradiction that the assertion of a diminished capacity may indeed be efficacious to negate the knowing mens rea of second degree murder.

Accordingly, the verdict of guilty of second degree murder in the present case could have been impacted improperly by the instructional error.  The result is that the error is not harmless.

_____
JAMES CURWOOD WITT, JR., JUDGE